[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION (MOTION TO STRIKE #111)
The plaintiff has filed a motion to strike the defendant Hartford Underwriters Insurance Company's (hereinafter referred to as "the Hartford") Fourth Special Defense to the plaintiff's claim for underinsured motorist coverage benefits, pursuant to an insurance policy between the plaintiff's decedent and the defendant Hartford.
On August 11, 1998, the plaintiff's decedent was struck and killed by an underinsured motorist. The plaintiff, acting in his fiduciary capacity as Administrator, settled his claim with the tortfeasor's insurer for the limit of the tortfeasor's insurance policy, approximately five months following the motor vehicle collision. CT Page 9068
The plaintiff's decedent, by virtue of her residence in her daughter's household, is alleged to have underinsurance motorist coverage available to her estate from the defendant Hartford, who insured the plaintiff decedent's daughter.
The subject insurance policy issued by the Hartford to the plaintiff decedent's daughter contains an exclusion which states that the Hartford "does not provide uninsured/underinsured motorist coverage for bodily injury sustained by an insured if the insured or the legal representative settles the bodily injury claim without our consent." The Hartford raises the alleged violation of this consent to settle provision of the policy as its Fourth Special Defense and maintains that no coverage is available to the plaintiff, as the plaintiff Administrator, acting as the legal representative of the decedent, failed to request the Hartford's consent before settling the claim against the tortfeasor for the full limit of the tortfeasor's policy coverage.
The plaintiff, in moving to strike the Hartford's Fourth Special Defense, relies greatly on Public Act 97-58, Sec. 4, which states:
 "No insurer providing underinsured motorist coverage as required under Title 38a of the General Statutes shall have any right of subrogation against the owner or operator of the underinsured motor vehicle for underinsured motorist benefits paid or payable by the insurer.
"Public Act 97-58, Section 4 is applicable to any claim or cause of action pending on or brought after March 19, 1996," as provided in Public Act 97-58, Sec. 5. Public Act 97-58 was approved May 27, 1997 with the effective dates provided in Section 5.
"The purpose of a motion to strike is to contest the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted." Mingachos v. CBS, Inc., 196 Conn. 91, 108,491 A.2d 368 (1985). A motion to strike shall be granted if "the plaintiff's complaint [does not] sufficiently [state] a cognizable cause of action as a matter of law." Mora v. Aetna Life and Casualty Ins. Co.,13 Conn. App. 208, 211, 535 A.2d 390 (1988).
A motion to strike "admits all facts well pleaded; it does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings" (Emphasis omitted.) Id. "A motion to strike is properly granted where a plaintiff's complaint alleges legal conclusions unsupported by facts." Id. CT Page 9069
"In ruling on a motion to strike, the court is limited to the facts alleged in the complaint." Gordon v. Bridgeport Housing Authority,208 Conn. 161, 170, 544 A.2d 1185 (1988). A motion to strike "is to be tested by the allegations of the pleading demurred to, which cannot be enlarged by the assumption of any fact not therein alleged." (Internal quotation marks and citations omitted.) Alarm Applications Co. v.Simsbury Volunteer Fire Co., 179 Conn. 541-50, 427 A.2d 822 (1980).
Upon deciding a motion to strike, the trial court must construe the "plaintiff's complaint in [a] manner most favorable to sustaining its legal sufficiency." Bouchard v. People's Bank, 219 Conn. 465, 471,594 A.2d 1 (1991). "The allegations of the pleading involved are entitled to the same favorable construction a trier would be required to give in admitting evidence under them and if the facts provable under its allegations would support a defense or a cause of action, the motion to strike must fail." Mingachos v. CBS, Inc., 196 Conn. 91, 108-09,491 A.2d 368 (1985).
Both the plaintiff and the defendant concede that the appellate courts in Connecticut have not yet addressed whether it is proper for a defendant in an uninsured or underinsured motorist action to raise the violation of a consent-to-settle provision as a special defense where the insured-plaintiff has pleaded the exhaustion of the tort feasor's insurance coverage.
The defendant Hartford, in its argument to deny the motion to strike the Fourth Special Defense, relies primarily upon the Superior Court decisions in Melita v. American States Insurance Co., Superior Court,Judicial District of Fairfield at Bridgeport, Docket No. 328791 (April11, 1997) (Hartmere, J.) and Bertz v. Horace Mann Insurance Co., SuperiorCourt, Judicial District of Waterbury, Docket No. 115842, (June 19, 1995)(Flynn, J.) (14 Conn.L.Rptr. 523).
Additionally, the defendant Hartford relies on § 38a-334-6 (c)(1) of the Connecticut Regulations of State Agencies which states that an insurer's obligation to pay underinsured motorists benefits may be made inapplicable to any claim which has been settled with the uninsured without the consent of the insurer.
The plaintiff, however, argues that Public Act 97-58, Section 4 not only eliminated an insurer's right to subrogation against a tortfeasor for underinsured motorists benefits paid to its insured, but additionally renders § 38a-334-6 (c)(1) of the Connecticut Regulations void and unenforceable.
In Bertz v. Horace Mann Insurance Co., supra, the court denied a CT Page 9070 plaintiff insured's motion to strike a special defense based on a violation of a consent to settle clause where the insured had settled for the full amount of the tortfeasor's liability policy. The court in Betz declared that whether the defendant insured would ultimately be able to prove, and prevail upon its special defense, was a matter that could not be decided as a matter of law on a motion to strike.
Additionally, the Bertz court reasoned that the purpose of the consent to settle clause is to protect the insurer's right to subrogation and that the reasoning employed by earlier courts is based on an overbroad assumption that, under Connecticut law, an insurance company has no right of subrogation against a tortfeasor. Bertz, supra 526.
Subsequent to the decision in Bertz v. Horace Mann Insurance Co., supra, the Connecticut Supreme Court issued its decision in WestchesterFire Insurance Company v. Allstate Insurance Company, 236 Conn. 362,672 A.2d 939 (1996) overruling its earlier decision in Berlinski v.Ovellette, 164 Conn. 482, 494, 325 A.2d (1973), which invalidated subrogation actions by providers of uninsured motorist benefits. The court in Westchester Fire Insurance co. v. Allstate Insurance Co., supraat 372, in drawing the distinction between conventional and equitable subrogation, ruled that where an insurer "was obligated by a preexisting contract of insurance to pay the losses of its insured, upon payment, becomes subrogated to any rights its insured might have had against the party who had caused the loss." Thus, insurers had the right to equitable subrogation in personal injury actions where the insurer paid uninsured motorist benefits to its insureds. The superior court in Melita v.American States Insurance Co., supra in 1997, relies upon the 1995 rulings in Bertz v. Horace Mann Insurance Co., supra and the 1996 Supreme Court decision in Westchester Fire Insurance Co. v. Allstate InsuranceCo., supra, regarding an insurer's ability to pursue subrogation in uninsured motorist claims in reaching its conclusion that consent to settle provisions in an insurance policy, as they affect uninsured motorist claims, are valid and enforceable. The underlying reasoning in each of these cases appears to be a concern for the insurer's ability to either maintain a subrogation action against the tortfeasor for uninsured or underinsured motorist benefits paid to its own insured and to assure that a policyholder uses his or her best efforts to limit the losses sustained by an insurer who is obligated to pay uninsured or underinsured motorist benefits to its policyholder. This second objective apparently is the basis for the consent to settle clause, which it is reasoned, is an inducement motivating the policyholder to seek a recovery from the tortfeasor directly in lieu of uninsured motorist benefits; or above and beyond the limits of the tortfeasor's liability insurance, in lieu of proceeding against a policyholder's own underinsurance coverage. CT Page 9071
In 1997, the Connecticut Legislature reacted swiftly to the decision inWestchester Fire Insurance Company v. Allstate Insurance Company, supra, by enacting Public Act 97-58 (now codified as C.G.S. 38a-336b), with an effective date of May 27, 1997, and applicable to any claim or cause of action pending on or brought after March 19, 1996, in direct response to the March 13, 1996 decision in Westchester Fire Insurance Co. v. AllstateInsurance Company, 236 Con. 362 (1996).
The court agrees with the plaintiff that the legislature's enacting of Public Act 97-58 was to foster a prompt resolution of underinsured cases and to allow the plaintiff to proceed against her own carrier without having a burden to investigate a tortfeasor's personal assets in an attempt to minimize the financial exposure to the insurance carrier providing underinsured motorist coverage.
Accordingly, it is the decision of the court that the defendant's Fourth Special should be stricken. The plaintiff's motion to strike the defendant's Fourth Special Defense is hereby granted.
The Court
By Arnold, J.